52 N.J. Super. 88 (1958)
144 A.2d 808
HAROLD W. SCHROEDER, PLAINTIFF,
v.
ROBERT W. ENGROFF AND ADELAIDE L. ENGROFF, HIS WIFE, DEFENDANTS AND THIRD-PARTY PLAINTIFFS, ROLAND HOSICK AND LILLIAN HOSICK, HIS WIFE, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 23, 1958.
*89 Mr. Edward L.C. Vogt for the plaintiff (Messrs. Schenck, Smith & King, attorneys).
*90 Mr. Ernest F. Keer, Jr., for the defendants and third-party plaintiffs (Messrs. Boyd, Dodd, Keer & Booth, attorneys).
Mr. Frederick T. James and Mr. John A. Wyckoff for third-party defendants (Messrs. James & Wyckoff, attorneys).
FOLEY, J.S.C.
This is an action for the possession of lands.
On July 13, 1933 a prior owner of the premises conveyed it as a portion of a large tract to one Merrill. The description in the deed, which thereupon was delivered to Merrill and recorded in the office of the Morris County Clerk, refers to an "iron stake" as the terminus of the second course. On December 1, 1953 Merrill conveyed to Hosick, the third-party defendants, employing the same description. They in turn conveyed to Engroff on April 3, 1956. Both instruments were duly recorded. On June 20, 1955 the then owners of the tract conveyed it to the plaintiff, excepting the portion previously conveyed by Jelliffe to Merrill.
The action is based on the contention that the deed from Jelliffe to Merrill does not accurately describe the property then intended to be conveyed, but that the parties intended that a piece approximately 20% smaller in area should pass. So it is argued that the plaintiff is entitled to the ownership and possession of the land beyond the borders of the true close.
The first problem presented is whether or not evidence may be received of a parol agreement between Jelliffe and Merrill which is at variance with the deed description. Testimony of this nature was admitted at the trial but subject to subsequent consideration of its competency.
Merrill testified that in 1933 a meeting was arranged with Dr. Jelliffe to satisfy his desire to own a "little piece of land." At the meeting they talked briefly and then went down to the parcel and looked it over. It contained no improvements, although there were indications of prior occupancy  stone walls, foundations and the like. Jelliffe agreed *91 to sell him a small portion and discussion of a water supply developed. There was a spring on the property and it was agreed that it would be included in the conveyance. It was agreed that a monument would be placed near the spring marking a corner of the property. Later an iron pipe was put down at that point. No measurements were made of any of the lines, it being satisfactory to both parties that the visual estimate they made be described in the deed as a rectangle 325' x 350'. The plaintiff also testified, over objection, to having seen this pipe in 1933 shortly after the transaction was completed. Parenthetically, it may be noted that the iron pipe is no longer on the land. When, why, or under what circumstances it vanished nobody knows.
It is urged by the plaintiff that this evidence should be received and be relied on as establishing the existence of a monument reflecting the contractual intent of the parties, and that the monument having been thus established should be controlling of the obvious conflict between the plotting of the property by use of the monument and the survey of it in accordance with the courses recited in the deed.
While it is true that extrinsic evidence is admissible where there is doubt as to the true location of a survey, Opdyke v. Stephens, 28 N.J.L. 83 (Sup. Ct. 1859), the rule permitting this showing is not without limitation. In Jackson v. Perrine, 35 N.J.L. 137 (Sup. Ct. 1871), it was held that where the language of the deed admits of but one construction and the location of the premises to be conveyed is clearly ascertained by a sufficient description in the deed in courses, distances and monuments, it cannot be controlled by a different exposition derived from the acts of the parties in locating the premises. In order to establish the validity of a parol agreement establishing a boundary it is necessary that a well grounded doubt appear as to the true location of the premises arising out of an uncertain, insufficient or inaccurate description in the deed. The rule permitting evidence aliunde to show the allegedly true location of boundaries sets down as a condition precedent to its operation the requirement that there be a latent ambiguity in the *92 deed description or uncertainty in its application to the premises granted. See Baldwin v. Shannon, 43 N.J.L. 596 (Sup. Ct. 1881).
The description here involved is unambiguous and the effect of the proffered proof would be to create rather than dispel an ambiguity. I am certain the rule permitting testimony aliunde was never intended to permit the accomplishment of so abortive a purpose. I hold, therefore, that the testimony of Merrill and Schroeder insofar as it related to the location of the iron pipe should be stricken.
This leaves the case barren of proof of the existence of a monument at a point in conflict with the stated courses and so the well established principle that in case of such a conflict the location of the monument governs does not come into play. Cf. Jackson v. Perrine, supra.
We appear to have no reported case in this jurisdiction in which the precise evidence question involved here has received judicial treatment and so in the interest of disposing of the factual issue which would arise in the event an appellate tribunal should disapprove my reasoning with respect to this question, I shall now treat with the matter as if the testimony alluded to had been held admissible.
It is not sufficient to vindicate a claim that the evidence in support of it stands uncontradicted. Rather it is required that the supporting proof be of such quality as to persuade the trier of the facts that it serves to satisfy the burden cast upon the proponent. The late Chief Justice Vanderbilt, in striking down the contention that the court is bound to accept uncontradicted proof as true even though it is believed to be improbable or uncredible, aptly said In re Perrone's Estate, 5 N.J. 514, 521 (1950):
"The court, however, is not so restricted in its capacity as trier of the facts but is free to weigh the evidence and to reject the testimony of a witness, even though not directly contradicted, when it is contrary to circumstances given in the evidence or contains inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence excite suspicion as to its truth. Testimony to be believed must not only proceed from the mouth of a credible witness but must be credible in itself. It must *93 be such as the common experience and observation of mankind can approve as probable in the circumstances. * * * Moreover, it is a well established and obviously salutary rule in this state that testimony of a witness need not be believed when the only person who could have contradicted the witness is dead."
I have no reason to question the good faith of either Merrill or Schroeder, although as to the latter, his self interest is a factor which may not be overlooked. But granting to each full faith in his veracity, I am still confronted with the problem of the reliability of human recollection in the circumstances. These circumstances include the fact that Merrill, unaided by anything except his memory, described what he saw on the ground twenty-five years ago. They include the fact that in the casual manner in which Jelliffe and Merrill dealt, the precise location of the monument then was of minor importance to the parties. They include also the fact that the property has passed through the hands of three sets of parties by warranted conveyances in reliance upon the accuracy of the descriptions contained therein.
The integrity of land titles and of instruments of record has always received the zealous protection of the courts, and properly so. I think I would fall short of furnishing this protection if I should rely upon so frail a thing as human memory of an event which happened 25 years ago to upend the record title. I therefore find as a fact that the proffered testimony is of insufficient weight to support the burden cast upon the plaintiff by the law. Judgment will go in favor of the defendant on the main case. The third party action will be dismissed.
A judgment in accordance with this memorandum may be submitted.